OLEG POGREBNOY (*in* Pro *Per*)

1705 Pico Blvd. suit 107

Santa Monica, CA 90405

Phone: (310)594-3341

E-MAIL: DVAVC@RCN.COM

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLEG POGREBNOY | CASE No. **CV10-08532** |
| PLAINTIFF | |
| v. | COMPLAINT |
| RUSSIAN NEWSPAPER DISTRIBUTION INC.; | |
| MMAP INC.; | |
| NEWS-TYPE SERVICE, INC., AKA NTS; | |
| VITALY MATUSOV; | |
| ALEXANDER GINSBURG; | |
| JOHN & JANE DOE 1 through 10; | |
| DEFENDANTS | |



1   Plaintiff, appears in Pro *Per,* complaining of the
2   Defendants and alleges as follows:

3

4                              **SUMMARY OF CLAIMS**
5

6   1.   Plaintiffs commenced this action after being victimized by the unlawful, and unfair acts
7        of Defendants, who in violation of US Copyright and Trademark, unlawfully, willfully
8        and repeatedly committed acts of false designation of origin, trade dress infringement,
9        trademark dilution by printing and distributing an unauthorized publication under
10       Plaintiff's trademark, held themselves out as the owners of the Plaintiff's mark (Kurier)
11       and intentionally prevented Plaintiff from distributing of his original publication, held
12       themselves as the owners of Plaintiff's trademark, thereby causing and continuing to
13       cause irreparable harm to Plaintiff's business, reputation, goodwill, trade name,
14       trademark.
15  2.   Unless the Court intervenes and enjoins Defendants' ongoing unlawful conduct, Plaintiff
16       will continue to be irreparably harmed and risks losing his business.
17  3.   Accordingly, Plaintiffs seeks injunctive, and monetary reliefs and bring the following
18       counts: (I) False designation of origin under §43 (a) of the Lanham Act, 15 U.S.C.
19       §1125(a); (II) trade dress infringement under §43 (a) of the Lanham Act, 15 U.S.C.
20       §1125(a); (III) breach of fiduciary duty; (IV) breach of specific contract; (V) breach of
21       implied contract (VI) fraud; and (VII) unjust enrichment.

22

23                            **JURISDICTION & VENUE**
24

25  4.   This Court has subject matter jurisdiction over this action pursuant to §43(a) of the
26       Lanham Act 15 U.S.C. §1121 (Lanham Act claims), 28 U.S.C. §1331 (federal question), 28
27       U.S.C. §1338(a)-(b) (original jurisdiction to adjudicate federal trademark claims and
28

                                      1
                                 COMPLAINT

1 accompanying claims of unfair competition), and 28 U.S.C. § 1367(a) (supplemental

2 jurisdiction over all other related claims).

3 5. Venue is proper in the Central District of California pursuant to 28 U.S.C. 1391(b)

4

5            **PARTIES**

6

7 6. Plaintiff Oleg Pogrebnoy (hereinafter Pogrebnoy) is a natural person and resident of

8 California. Plaintiff is current owner of Kurier trademark[1] and the owner of the website

9 and domain name Kurierweb.US.

10 7. Defendant Russian Newspaper Distribution Inc., is a California corporation with

11 principle place of business at 425 S. Fairfax Ave. Suite # 301, Los Angeles, CA 90036.

12 RND is the owner, publisher, controller and operator of the Los Angeles publication

13 Kurier (hereinafter alleged Kurier), which infringes on plaintiff's trademark and trade

14 dress. It is also an owner, controller and operator of the LA Kurier.com (Hereinafter

15 LAK)- domain name and Internet website, which interactively promotes and advertise

16 alleged Kurier. LA Keurier.com domain name is substantially similar to the Plaintiff's

17 Kurieir trademark and domain name Kurierweb.US.

18 8. Defendant MMAP Inc., is a California with principal place of business at 425 S. Fairfax

19 Ave. Suite # 301, Los Angeles, CA 90036corporation. It is the owner, controller and

---

[1] While Plaintiff's previous case Index No.08-1080-PA(SSX) was dismissed for lack of standing, Plaintiff's current theory of ownership based on different grounds - assignments of trademark ownership and right to sue for past infringements, from Plaintiff's corporations on to himself. Assignments dated December 2008 and November 2010, which is after the date of commencing of prior litigation. "To the extent that the dismissal in the original action was for lack of standing, there is no res judicata bar to a second action by a party with proper standing, but only a bar to another action by the same party alleging the same basis for standing (here, Triple Tee's claim of standing based on the purported 2000 assignment). See, e.g., Whitmore v. Arkansas, 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)" *John P. GILLIG and Triple Tee Golf, Inc., Plaintiffs-Appellants, v. NIKE, INC.,* Defendant-Appellee. No. 2009-1415. (April 20, 2010)

operator of the alleged Kurier and LAK. Defendant News-Type Service, Inc., AKA NTS is a California corporation with an office at 1506 Gardena Ave., Glendale 91204. NTS Actively willfully and knowingly, participates in the alleged infringements by printing alleged Kurier.

9. Defendant Vitaly Matusov(hereinafter Matusov) is a natural person, resident of California. Matusov is the owner, officer, controller and operator of the RND and LAK.

10. Defendant Alexander Ginsburg (hereinafter Ginsburg) is a natural person resident of California. Ginsburg is the owner, officer, controller and operator of the RND and LAK .

## FACTS COMMON TO ALL COUNTS

11. In or about early 1992, Plaintiff founded his business Russian language weekly newspaper Kurier (Hereinafter Krurier), which operated continuously without interruption ever since. It sold weekly to the members of the Russian speaking community in various states all over US and in some cites in Canada.

12. At the time it was only one other Russian newspaper in New York - Novoye Russkoye Slovo), and one in Los Angeles - Panorama.

13. In less then a year, Kurier became most popular weekly newspaper among Russian speaking communities all over US.

14. Since the beginning of its operations in 1992, Plaintiff, directly and through related business entities, invested substantial effort, time, money and energy into developing, promoting, publicizing, and marketing "Kurier" mark.

15. Even though Kurier was initially distributed mainly on the east coast - in NY, NJ, PA, MD, etc., individual copies were mailed at customers' requests by mail all over US, including Los Angeles and some other cities in California.

16. That was the first penetration of the Kurier trademark on to the Los Angeles and California market.

17. In 1994 Plaintiff decided to expand his business to Los Angeles, which is the second largest Russian speaking market after New York.

18. To accomplish this Plaintiff decided to use his old time friend Vitaly Matusov, who was at the time, residing in Los Angeles.

19. In 1994 Plaintiff and Matusov agreed that Matusov will distribute Kurier in LA, solicit local customers for advertising in the newspaper and collect payment.

20. For his involvement Matusov would be compensated by getting 50% of the gross income of Kurier i.e. sale of advertising and newspapers, and will collect and send to Plaintiff his 50% cut.

21. In 1994-1995 hard copies of Kurier newspapers were send to Matusov from Plaintiff's office in New York on a weekly basis, and Matusov was distributing them through the Russian stores in Los Angeles.

22. That was second and major penetration of the Kurier mark in to the Los Angeles market.

23. In or about 1995, instead of sending actual newspapers, Plaintiff instructed his printers in New York to send films[2] of the Kurier, from which LA Kurier were printed.

24. Using razor and scotch tape Matusov was substituting Los Angeles ads for New York's ads and then delivered them to the local printers who printed Los Angeles edition (hereinafter LA Kurier) of the Kurier.

25. At the time, artwork for the LA Kurier's ads was made by NY Kurier's employees in New York and sent to Matusov.

26. Each page of LA Kurier contained heading to the effect that it was east coast edition of Kurier.

27. In or about 1998 Matusov begin complaining to Plaintiff that his expanses increased and Plaintiff agreed to increase Matusov's compensation from 50% to 60% of Kurier's gross income.

---

[2] Until recent, newspaper printers were shooting films of each page of the newspaper stencil boards to make plates for printing newspaper.

28. At the time Matusov represented to the Plaintiff that his 40% from gross income of Kurier, on average will come to $2800 a month, which amount Matusov was sending to Plaintiff on the monthly bases.

29. Plaintiff and Matusov agreed that if Kurier's income would increase then Matusov would adjust payments accordingly.

30. During all these years, Plaintiff, time to time, inquired from Matusov whether Kurier's income increased, but Matusov always answered negatively[3]. Plaintiff foolishly trusted Matusov relying on their long time relationship, therefore never checked the books and records of the LA edition.

31. In 2007 Plaintiff demanded from Matusov to produce books and records for LA Kurier.

32. Matusov initially agreed but then refused to do[4].

33. On or about November 26, 2007 Plaintiff called Matusov and in heated conversation informed him that Matusov's services are no longer required and terminated oral contract with Matusov.

34. Plaintiff warned Matusov not to print any unauthorized Kurier publication or face legal consequences.

35. Plaintiff also called Ginsburg and informed him that Matusov's license to print LA Kurier has been terminated.

36. Same day Plaintiff went to News-Type Service, Inc., and warned them that if NTS will participate in printing of unauthorized newspaper with Plaintiff's trademark they will face legal consequences.

37. Matusov, Ginsburg and NTS ignored Plaintiff's warnings and continued to print and distribute unauthorized Kurier publication.

38. Defendant's unauthorized publication has exactly same look and feel as Plaintiff's publication and uses Plaintiff's distinctive trademark, masthead and heading on each

---

[3] Upon information and belief gross income of Kurier in Los Angeles is about $800,000 a year. In a prior litigation Defendants admitted to the gross income of $600,000.

1   page, therefore creates confusion of average buyers as to the source and origin of the

2   Kurier publication.

3   39. Plaintiff's attorney in New York – Joel Bouhmart, sent cease and desist letter to NTS,

4   but NTS continued to print alleged Kurier.

5   40. On or about November 29, 2007, Plaintiff printed his version of Los Angeles edition of

6   Kurier and went to distribute it to the Russian stores, which sells all Russian

7   newspapers and used to sell LA Kurier.

8   41. Upon the information and belief Ginsburg and other unidentified persons, called to

9   almost each and every store, which sells Russian Newspapers and represented to them

10   that Plaintiff Kurier is a fraud and convinced them not to accept for sale Plaintiff's

11   Kurier.

12   42.  Until present Defendants knowingly and unlawfully continue to distribute unauthorized

13   Kurier preventing Plaintiff from distributing original publication, thereby causing and

14   continue to cause significant irreparable injury to Kurier trademark, reputation, and

15   goodwill of the business.

16   43. All of the Defendants knowingly and willfully either committed and/or contributed to all

17   violations complained of hereto.

18   44. Defendants' wrongful and illegal acts complained hereto, have caused and will continue

19   to cause significant irreparable harm to the goodwill and reputation of Plaintiff's

20   business unless enjoined by this Court.

21   **FIRST COUNT**

22   **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION IN VIOLATION**

23   **OF 43(A) OF LANHAM ACT, 15 U.S.C. § 1125 (A)**

24   **TRADEMARK INFRINGMENT**

25   **(AGAINST ALL OF THE DEFENDANTS)**

26   45.  Plaintiff repeats, reiterates and re-allege each and every allegation contained in the

27   preceding paragraphs with the same force and effect as if it fully set forth herein.

28

1   46. Defendants' hijacking, copying, theft, infringement, and unauthorized commercial use
2       of Plaintiff's distinctive trademark "Kurier" constitutes false designation of origin and
3       false advertisement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)
4   47. For furtherance of their wrong, Defendants open a website under domain name
5       LAkurier.com., and using it for promotion and advertising of alleged Kurier.
6   48. Defendants hijacking, copying, theft, infringement, and unauthorized commercial use of
7       Plaintiff's Mark is likely to cause confusion, mistake and/or to deceive the public as to
8       the source and/or origin of the Kurier publication.
9   49. All of the defendants either committed or participated and contributed in alleged
10      wrongdoings.
11  50. The harm to Plaintiff and/or his legal predecessor[5], resulting from Defendants' unlawful
12      acts is irreparable, continuing, and not fully compensable by money damages.
13  51. Defendants' unlawful acts have significantly damaged Plaintiff and will continue to
14      cause damages and irreparable injury to Plaintiff unless enjoined by the Court.
15  52. Based on Defendants' activities, Plaintiff reasonably believes that Defendants intend to
16      continue unlawfully and unfairly using Plaintiff's trademark and trade dress.
17  53. As such, Plaintiff are entitled to a preliminary and permanent injunction, pursuant to 15
18      U.S.C. §1116(a), prohibiting Defendants from any and all use of Plaintiffs' trademark
19  54. Plaintiff is entitled to recover from Defendants all damages that Plaintiffs have
20      sustained and will sustain as a result of such infringing acts and all gains, profit and
21      advantages obtained by Defendants as a result thereof, in an amount of two million plus
22      the amounts are not yet known, but which Plaintiff is entitled to have trebled due to
23      Defendants' willful infringement plus the costs of this action, and attorneys' fees,
24      pursuant to 15 U.S.C. §1117.
25

[5] Plaintiff alleges his ownership in trademark, trade dress etc., based on the assignments of rights from their previous owners - legal entities. Therefore, any alleged wrong harm or damage to the Plaintiff complained hereto would also include wrong, harm or damage sustained by said business entities.

**SECOND COUNT**

**FALSE DESIGNATION OF ORIGINE AND UNFAIR COMPETITION IN VIOLATION OF 43(A) OF LANHAM ACT, 15 U.S.C. §1125(a).**

**TRADE DRESS INFRINGEMENT**

**(AGAINST ALL OF THE DEFFENDANTS)**

55. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if it fully set forth herein.

56. Defendants hijacking, copying, theft, infringement, and unauthorized commercial use of Plaintiffs' arbitrary and distinctive trade dress elements including, but are not limited to: a masthead appearance (background color; fonts used; design etc.), each page heading and appearance, constitutes a false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57. Defendants publication infringe on Kurier's, trade dress by incorporating identical distinctive elements that, alone and/or or in combination, create a likelihood of confusion as to the source and quality of Defendants' products.

58. Defendants' misuse and infringement of Kurier's trade dress is willful, wanton, intentional and deliberate.

59. All of the defendants either committed or participated in alleged wrongdoings.

60. For furtherance of their wrong, Defendants open a website under domain name LAkurier.com., and use it for promotion and advertising of alleged Kurier.

61. The harm to Plaintiff resulting from Defendants' unlawful acts is irreparable, continuing and not fully compensable by money damages.

62. Defendants' unlawful acts have significantly damaged Plaintiffs and will continue to cause damage and irreparable injury to Plaintiffs unless enjoined by the Court.

63. Based on Defendants' activities, Plaintiff reasonably believes that Defendants intend to continue unlawfully and unfairly using Plaintiff's trade dress.

64. As such, Plaintiff is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. §1116(a), prohibiting Defendants from any and all use of Plaintiff's trade dress.

65. Plaintiff is entitled to recover from Defendants all damages that Plaintiff have sustained and will sustain as a result of such infringing acts and all gains, profit and advantages obtained by Defendants as a result thereof, in an amount of two million. Plus any amount presently unknown but for which Plaintiff is entitled to have trebled due to Defendants' willful infringement or, in the alternative, statutory damages as the Court considers just plus the costs of this action, including attorneys' fees, pursuant to 15 U.S.C. §1117.

### THIRD COUNT
### BREACH OF FIDUCIARY DUTY
### (AGAINST VITALY MATUSOV)

66. Plaintiffs repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

67. In 1994 Plaintiff either personally or as an agent for the relevant corporation entered into a valid and binding contract with the Defendant Matusov to the effect that Matusov would use Kurier mark only as permitted by Plaintiff i.e. as a masthead of the LA Kurier.

68. Contract also provided for Matusov to collect and send to Plaintiff alleged 40% of LA Kurier's income.

69. Said contract were reaffirmed between Matusov and Plaintiff with the respect to each and every relevant corporation.

70. At all relevant times before termination of the contract, Plaintiff and all associated with him companies, fully performed his/their duties and obligations under the agreement, providing valuable consideration, and fully complied with all terms, conditions, and requirements thereof.

71. Matusov was in superior position to Plaintiff or any related corporation with the respect to his knowledge about true revenues of LA Kurier and receipt of funds.

72. The misappropriating of alleged 40% of Plaintiff funds by Matusov constitutes a breach of fiduciary duties to the Plaintiff.

73. Defendants' acts alleged in this count constitute breach of fiduciary duties to Plaintiff, and have caused substantial monetary damage to Plaintiff's business trademark, reputation and good will, in the amount presently unknown.

## FORTH COUNT
## BREACH OF SPACIFIC CONTRACT
## (AGAINST VITALY MATUSOV)

74. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

75. In 1994 Plaintiff either personally or as an agent for the relevant corporation entered into a valid and binding contract with the Defendant Matusov to the effect that Matusov would use Kurier mark only as permitted by Plaintiff i.e. as a masthead of the LA Kurier.

76. Contract also provided for Matusov to collect and send to Plaintiff alleged 40% of LA Kurier's income.

77. Said contract were reaffirmed between Matusov and Plaintiff with the respect to each relevant corporation at all relevant time.

78. At all relevant times before termination of the contract, Plaintiff and all associated with him companies, fully performed his/their duties and obligations under the agreement, providing valuable consideration, and fully complied with all terms, conditions, and requirements thereof.

79. At all relevant times before termination of the contract, Plaintiff and all associated with him companies, fully performed his/their duties and obligations under the agreement, providing valuable consideration, and fully complied with all terms, conditions, and requirements thereof.

80. Matusov materially breached the Agreement by misappropriating alleged Plaintiff's 40% and since 2007 misusing Kurier's mark by using it with his own publication.

81. As a direct result of Matusov's material breach of the contract, Plaintiff has been injured and suffered extensive monetary damages, in the amount presently unknown.

### FIFTH COUNT
### BREACH OF IMPLIED CONTRACT
### (AGAINST VITALY MATUSOV)

82. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

83. In the even that court will not find specific contract, then contract should be implied from the facts of the case and dealings between the parties, to the effect that:

84. In 1994 Plaintiff either personaly or as an agent for the relevant corporation entered into a valid and binding contract with the Defendant Matusov to the effect that Matusov would use Kurier mark only as permitted by Plaintiff i.e. as a masthead of the LA Kurier.

85. Contract also provided for Matusov to collect and send to Plaintiff alleged 40% of LA Kurier's income.

86. Said contract were reaffirmed between Matusov and Plaintiff with the respect to each relevant corporation at all relevant time.

87. At all relevant times before termination of the contract, Plaintiff and all associated with him companies, fully performed his/their duties and obligations under the agreement,

providing valuable consideration, and fully complied with all terms, conditions, and requirements thereof.

88. Defendant Matusov materially breached implied Agreement by misappropriating alleged 40% Plaintiff's funds and misappropriating Kurier's mark by using it with his own publication.

89. As a direct result of Defendants' material breaches of the Agreement, Plaintiffs have been injured and suffered extensive monetary damages, in an amount presently unknown.

**SIXTH COUNT**

**FRAUD**

**(AGAINST VITALY MATUSOV)**

90. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

91. Matusov misrepresented to Plaintiff and/or omitted material facts as to the income of the LA Kurier and thyat to that $2800 a month constitutes 40% of gross income, with the intent to deceive and defraud thereby caused substantial damages to Plaintiff.

92. Plaintiffs justifiably relied on Matusov's material and knowingly false representations as to the income of the LA Kurier, and that $2800 a month would constitute alleged 40% of LA Kurier income.

93. Matusov's acts of fraud are willful, wanton, intentional and deliberate.

94. Accordingly, in equity and good conscience, Matusov must be compelled to return to Plaintiff the difference between $2800 which was paid monthly to Plaintiff since 1998, and the amount of true 40% of LA Kurier's gross income, les printing cost, which amount presently unknown.

**SEVENTH COUNT**

**UNJUST ENRICHMENT**

**(AGAINST MATUSOV)**

95. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

96. Defendants' misappropriation of Plaintiffs' trademark, trade dress, and other valuable intellectual property, as well as Plaintiff's alleged 40% cut, have caused Matusov to be unjustly enriched.

97. As described herein, such enrichment was unjust and at Plaintiff's expense.Matusov knowingly and willfully, committed and/or contributed to Plaintiff's trademark and trade dress infringement thereby caused Plaintiff substantial monetary damages in the amount presently unknown.

12
COMPLAINT

98. Accordingly, in equity and good conscience, Matusov must be compelled to return to Plaintiff all funds, in the amount presently unknown, which derived from publishing and distribution of unauthorized Kurier newspaper, and such other unjust enrichment unlawfully obtained by Defendants from Plaintiff.

**Wherefore** Plaintiff seeks judgment as follows:

On the **First count,** for the compensatory damages in the amount of two million dollar and three times of the actual damages of any additional amount to be determined at trial, permanent injunction and reasonable legal fees and expanses.

On the **Second count,** for the compensatory damages in the amount of two million dollar and three times of the actual damages any additional amount to be determined at trial, permanent injunction and reasonable legal fees and expanses.

On the **Third count,** for compensatory damages three times of the actual damages in the amount to be determined at trial, permanent injunction and reasonable legal fees and expanses.

On the **Fourth count,** for the compensatory damages in the amount to be determined at trial, and forfeiture of Matusov's compensation.

On the **Fifth count,** for compensatory damages in the amount to be determined at trial.

On the **Sixth count,** for damages in the amount to be determined at trial.

On the **Seventh count,** for return of Plaintiff's funds in the amount to be determined at trial.

Dated: November 9, 2010

Oleg Pogrebnoy
Plaintiff *in Pro Per.*

13
COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV10- 8532 AHM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** <br> 312 N. Spring St., Rm. G-8 <br> Los Angeles, CA 90012 | [ ] **Southern Division** <br> 411 West Fourth St., Rm. 1-053 <br> Santa Ana, CA 92701-4516 | [ ] **Eastern Division** <br> 3470 Twelfth St., Rm. 134 <br> Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY